UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| KATHLEEN M. MAHONEY, | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | No. 2:10-cv-161-GZS |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2012, Finding 1, Record at 13; that she had severe impairments of major depressive disorder and PTSD, Finding 3, *id.*; that she did not have an impairment or combination of impairments that met or medically equaled the criteria of any impairment listed in Appendix 1 to Subpart P, 20

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

C.F.R. § 404 (the "Listings"), Finding 4, *id*. at 14; that she retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with a nonexertional limitation to unskilled, routine, repetitive tasks with consistency of tasks from day to day, in which context she would be able to maintain focus, attention, concentration, persistence, and pace and tolerate brief interaction with the public and brief and superficial contact with supervisors, Finding 5, *id*. at 15; that, considering her age (47 years old as of the alleged disability onset date), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 20; and that she, therefore, was not disabled, as defined in the Social Security Act, from October 14, 2006 (her alleged onset date of disability), through the date of the decision (November 20, 2009), Finding 11, *id*. at 21. The Decision Review Board failed to review the decision within 90 days, making the decision the final determination of the commissioner, *id*. at 1-3; 20 C.F.R. § 405.450(b); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R.

§ 404.1520(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 3 of the sequential evaluation process. At Step 3, a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520(d)); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 405.101 (incorporating C.F.R. § 404.1525(c)(3)). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1526(a)).

**I. Discussion**

The plaintiff seeks reversal and remand on the basis that the administrative law judge erred in failing to find that she met Listings 12.04 (affective disorder/depression) and 12.06 (anxiety disorder), at least for a period of time following a nervous breakdown that compelled her to stop working in October 2006. *See* Plaintiff's Statement of Errors and Fact Sheet ("Statement of Errors") (Docket No. 9) at 1-7. I find no reversible error and, hence, recommend that the decision be affirmed.

## A. Listings 12.04 and 12.06

The plaintiff contends that she met Listings 12.04 and 12.06 by satisfying the so-called "B criteria," which require that an affective or anxiety disorder result in at least two of the following: (i) marked restriction of activities of daily living, (ii) marked difficulties in maintaining social functioning, (iii) marked difficulties in maintaining concentration, persistence, or pace, or (iv) repeated episodes of decompensation, each of extended duration. *See id.* at 4; *see also* Listings 12.04, 12.06. She asserts that her impairments caused marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace, with repeated episodes of decompensation at work prior to her termination of employment, although not of the required duration. *See* Statement of Errors at 4.

She suggests that the administrative law judge reached the wrong Listings conclusion by mishandling the opinions of treating providers and making a flawed credibility determination that placed undue emphasis on her capacity to undertake non-pressured family, church, and home activities that were not indicative of an ability to return to work. *See id*. at 6-7.

In so arguing, the plaintiff overlooks the fact that the record contains only two expert opinions addressing the question of whether she met Listings 12.04 or 12.06, neither of which supports her position. In a Psychiatric Review Technique Form ("PRTF") dated January 16, 2008, Brenda Sawyer, Ph.D., expressed the opinion that the plaintiff's mental impairments did not meet or equal any listing, imposing only a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, with one or two episodes of decompensation, each of

extended duration. *See* Record at 330. In a case analysis dated July 28, 2008, psychiatrist H.T. Unger, M.D., agreed that the plaintiff's mental impairments did not meet or equal a listing, albeit on the basis that, although her impairments were severe, they were not expected to last 12 months. *See id.* at 361.[2]

The administrative law judge gave little weight to the Unger opinion, reasoning that the record reflected a degree of limitations continuing for more than 12 months. *See id.* at 19. She essentially adopted Dr. Sawyer's "B criteria" findings, which she found well-reasoned and supported, with the modification that she found a moderate, rather than mild, limitation in social functioning. *See id.* at 15, 19. The Sawyer opinion, as modified in the plaintiff's favor, supplies substantial evidence in support of the administrative law judge's Listings finding. *See, e.g., Berrios Lopez v. Secretary of Health & Human Servs.*, 951 F.2d 427, 431 (1st Cir. 1991) (reports of two non-examining, non-testifying medical advisors constituted substantial evidence of claimant's RFC when advisors reviewed most, if not all, of medical record and the report of one advisor contained subsidiary medical findings to support his RFC conclusions). That is dispositive of the instant appeal, which the plaintiff's counsel affirmed at oral argument turns on the question of the Listings. *See* Statement of Errors at 4. In an abundance of caution, however, I consider the subsidiary points raised in the Statement of Errors.

---

2 At oral argument, the plaintiff's counsel contended that it was clear that his client met Listings 12.04 and 12.06 when she left her job and for some period of time thereafter, noting that her symptoms included an inability to concentrate, excessive sleeping, crying, and lack of energy. However, as counsel for the commissioner rejoined, meeting a mental health listing entails not only a demonstration of symptoms but also of psychiatric "signs," defined as "medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, as described by an appropriate medical source." Listing 12.00B.

## B. Treatment of Treating Providers

To the extent that the plaintiff complains about the administrative law judge's handling of the opinions of treating providers, I likewise discern no error. The treating provider opinions in question consist of:

1. Findings by John J. Froelich, M.D., as part of an initial evaluation on November 29, 2006, that the plaintiff had a Global Assessment of Functioning ("GAF") score of 44 and that "[s]ymptoms of depression are still disabling, and [the plaintiff] is not able to return to work as she constantly breaks down crying and is overwhelmed by anxiety at the prospect of returning to work." Record at 259.[3]

2. A statement by James R. Fecteau, Jr., M.D., dated December 4, 2007, that he was "hopeful that with ongoing treatment [the plaintiff's] depressive symptoms can be alleviated with [the plaintiff] returning to her normal level of effective functioning[,]" that the "[l]ength of time to achieve this goal [was] unclear at [that] time[,]" and that the plaintiff was "easily overwhelmed and emotionally fragile [with] increased sensitivity and irritability, tearfulness, daytime fatigue requiring naps, rumination, difficulty sustaining and following through on requests, etc." *Id.* at 280.

---

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000) ("DSM-IV-TR"), at 32. The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34 (boldface omitted).

3. A finding by Mary C. Hazzard, MS, LCPC, incident to an initial assessment dated June 10, 2008, that the plaintiff had a GAF score of 49, with her highest GAF score in the prior year being 55. *See* Record at 409.

To the extent that Dr. Froelich offered an opinion that the plaintiff was disabled, he addressed an issue the determination of which is reserved to the commissioner. *See* 20 C.F.R. § 404.1527(e)(1). With respect to such issues, even opinions of treating sources are accorded no "special significance[.]" *Id.* § 404.1527(e)(3). The administrative law judge was free to decline to adopt that opinion so long as she supplied "good reasons" for doing so. *See id.* § 404.1527(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion"); *see also, e.g.*, Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ( "SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)").

The administrative law judge accorded little to no weight to Dr. Froelich's disability opinion on grounds that it appeared to be based on the plaintiff's subjective allegations, was not supported by the contemporaneous treatment records, and bore on an issue the determination of which is reserved to the commissioner. *See* Record at 19. The plaintiff asserts that the administrative law judge cited no specific contemporaneous treatment records because no such records exist and, with regard to a mental health claim of depression and anxiety, there is no objective way in which to measure the extent and severity of the symptoms other than by subjective complaints and by the observation of the treatment provider who establishes a relationship with the patient. *See* Statement of Errors at 6.

The plaintiff was seen by both her longtime counselor Lana Clough, LCSW, and her primary care physician, William Chernin, M.D., in the period immediately leading up to and following her departure from work in October 2006. *See, e.g.*, Record at 226-31, 273-78. She began receiving treatment from counselor Holly Zirkle, LICSW, on October 30, 2006, *see id.* at 317-19, and from Dr. Froelich on November 29, 2006, *see id.* at 257-59.

Zirkle assessed the plaintiff on intake on October 30, 2006, as having a GAF score of 51, reflective of moderate symptoms, *see id.* at 319,[4] and noted as of November 15, 2006, that the plaintiff was making some progress toward the objective of mood management and had joined a church choir, a "positive self-care step," *see id.* at 314. Hence, there was some conflict in the evidence concerning the plaintiff's degree of functional limitation even at this early stage of her recovery. In addition, as the administrative law judge noted, *see id.* at 17, the evidence as a whole reflects improvement in the plaintiff's symptoms with the benefit of medication and counseling, despite some ups and downs, *see, e.g., id.* at 252, 254 (plaintiff noted by Dr. Froelich to have reported a 40 to 45 percent improvement in her depressive symptoms as of February 7, 2007, and a 70 percent improvement as of April 3, 2007), 281 (plaintiff noted by Zirkle to be feeling better and functioning more effectively as of December 12, 2007), 352 (plaintiff noted by Dr. Fecteau to have full range and a brighter affect as of October 30, 2007). The administrative law judge accordingly supplied the requisite good reason for declining to adopt the Froelich disability opinion.

To the extent that Dr. Froelich assessed the plaintiff's GAF score and Dr. Fecteau described the nature and severity of her impairments, they offered so-called "medical opinions,"

---

[4] A GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.* (boldface omitted).

defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). A medical opinion is given controlling weight only when it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record. *See id*. § 404.1527(d)(2); Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 96-2p"), at 111.

Hazzard, a counselor, is not an "acceptable medical source" whose opinion can be entitled to controlling weight. *See* 20 C.F.R. § 404.1513(a); Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 06-03p"), at 329. Yet, the opinion of a non-acceptable medical source such as Hazzard must be considered, *see id*. at 330, with the adjudicator explaining the weight given to the opinion or otherwise "ensur[ing] that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*. at 333.

The administrative law judge, in effect, found the Froelich GAF score of 44 inconsistent with other substantial evidence in the case record, including the Zirkle GAF score assessment of 51, *see id*. at 319, and a GAF score of 55 by Dr. Fecteau as of August 21, 2007, *see id*. at 359. *See id*. at 17. This was a legitimate basis on which to decline to give it controlling or even significant weight. She accorded little weight to the Fecteau opinion concerning the plaintiff's level of functioning because Dr. Fecteau had last seen the plaintiff in November 2007 and his own records, as well as those of other treatment providers, reflected that her condition improved

9

in 2007 and 2008. *See id*. at 18. The plaintiff protests that Dr. Fecteau did in fact see her on five other occasions after November 2007, *see* Statement of Errors at 6, and that, while there is evidence of improvement in 2007 and 2008, "she also showed significant periods of decompensation and regression throughout the same period[,]" *id*. at 7.

Nonetheless, the administrative law judge supportably declined to give controlling or significant weight to the Fecteau opinion on grounds that it described the plaintiff's state of functioning only through November 2007, *see* Record at 279-80, and that the plaintiff's functioning generally improved in 2007 and 2008, as reflected in the notes of Dr. Fecteau and other treating providers, *see, e.g., id*. at 338 (March 13, 2008, note of Dr. Fecteau finding the plaintiff's affect somewhat brighter; noting that the plaintiff reported that she was "doing okay" and she had noticed a "little upbeat swing in mood").

The administrative law judge accorded little weight to Hazzard's GAF score, noting that (i) it was made in the context of an initial assessment, (ii) subsequent records from Dr. Chernin did not repeat or support that score, with Dr. Chernin assessing the plaintiff as usually stable with a normal mental status, (iii) the score was inconsistent with the plaintiff's active daily routine with her children, and (iv) while she may have had a few months of increased symptoms from May through August 2008, the evidence did not support continuation of that level of limited functioning. *See id*. at 19. The plaintiff takes issue with reliance on Dr. Chernin's omission of any GAF score, stating that he was a family doctor, not a mental health expert. *See* Statement of Errors at 6. Nonetheless, she does not challenge the full panoply of reasons given for the little weight accorded to the Hazzard GAF score, which reflect due consideration of that evidence in accordance with SSR 06-03p.

## C. Credibility Determination

The plaintiff finally faults the administrative law judge for drawing negative inferences regarding (i) her willingness to work based on her receipt of 15 months of disability payments and (ii) the severity of her symptoms based on her ability to engage in non-pressured family, church, and home-based activities that, in her opinion, did not rebut the consistent and unanimous opinions of her treating providers that she did not retain a sufficient level of functionality to maintain substantial gainful employment on a regular, full-time basis. *See* Statement of Errors at 7. I find no reversible error.

An administrative law judge's credibility determinations are "entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987). That is the case here.

The administrative law judge found that the plaintiff had:

1. Engaged in a wide array of activities inconsistent with her allegations of a disabling level of symptomatology, including caring for her personal needs, caring for her four sons, preparing simple meals, cleaning, doing laundry, shopping, managing money, paying bills, managing medical appointments, driving an automobile, going for walks, using a treadmill once or twice a week, running, gardening, listening to music, reading, and watching television without apparent difficulty concentrating. *See* Record at 18; and

2. Received 15 months of disability payments from her employer, which, while not dispositive of her claim, "did create an economic disincentive to seek and obtain employment within her abilities . . . and does further undermine her credibility." *Id*.

"[T]he receipt of benefits under a parallel scheme is, alone, not a sufficient reason to discredit a claim of disability." *Martinez v. Astrue*, No. EDCV 09-0716-CT, 2009 WL 2634172, at *6 (C.D. Cal. Aug. 25, 2009) (citing *Eichel v. New York Cent. R.R. Co.*, 375 U.S. 253, 255 (1963)). Nonetheless, as noted by counsel for the commissioner at oral argument, the administrative law judge did not rely solely on the plaintiff's receipt of benefits, taking into consideration, as well, the scope of her activities of daily living.

While a claimant's activities of daily living, standing alone, may not constitute substantial evidence of a capacity to undertake full-time remunerative employment, *see, e.g., Eaton v. Astrue*, Civil No. 07-188-B-W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008) (rec. dec., *aff'd* December 1, 2008), an administrative law judge properly may take such activities into consideration in assessing the credibility of a claimant's allegations, *see, e.g., Nolan v. Astrue*, Civil No. 09-323-P-H, 2010 WL 2605699, at *7 n.4 (D. Me. June 24, 2010) (rec. dec., *aff'd* July 28, 2010), and in resolving conflicts in the evidence with respect to medical experts' and treating providers' opinions of a claimant's capabilities, *see, e.g., Eaton*, 2008 WL 4849327, at *5. That is precisely what the administrative law judge did here.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

***Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.***


Dated this 30th day of March, 2011.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge